NEW-YORK,
May, 1830.

Weed
v.
Carpenter.

---

## WEED and WEED vs. CARPENTER.

Where a person for a series of years *forged* the name of his friend as the endorser of his notes and bills, with the knowledge of his friend, who, although judgments were obtained and executions issued against him in suits on such *forged* endorsements, never disavowed such acts until the person committing the forgeries had absconded and fled from justice, *it was held*, in a case where the endorser was sued and suffered a default, and attempted no defence until after the escape of the maker of the notes, that proof of these facts was admissible in evidence, and that from it the jury might imply an authority from the endorser to the maker thus to use his name.

THIS was an action of assumpsit against the defendant as endorser of a promissory note, for $247,10, due the 4th September, 1827, tried at the Rensselaer circuit in 1828.

The defence set up was *forgery* by the maker in endorsing the name of the defendant on the note. To resist the defence, the plaintiffs shewed that on the 20th October, 1827, an execution against the defendant in favor of J. P. & J. D. Phoenix, for $415,44, was put into the hands of the sheriff of Rensselaer county; that when apprised of it, the defendant expressed his surprise that such an execution should be against him, said that he was not acquainted with the plaintiffs, but presumed that the execution must be on account of Lodowickus L. Viele's business. Viele was the

NEW-YORK,    brother-in-law of the defendant, and absconded on the 30th
May, 1830.   or 31st December, 1827. On the 15th day of January,
~~~~~~~~      1828, the defendant made an affidavit to base a motion to set
  Weed       aside the judgment in favor of the Phoenixs, wherein he stat-
   v.        ed that the judgment was obtained against him as the en-
Carpenter.   dorser of a note, which he had never endorsed, and that he
             had never authorized such endorsement; that a capias had
             not been served upon him, nor had he endorsed or author-
             ized his appearance to be endorsed upon any writ at the suit
             of the plaintiffs; that after being apprised of the execution,
             Viele acknowledged the forgery and promised to pay the
             same; and that, relying upon his assurances, he took no im-
             mediate measures to set aside the judgment. On the 14th
             January, 1828, the defendant, for the purpose of setting aside
             the judgment in this cause, made an affidavit that a capias
             was served on him about the 20th day of October, 1827; that
             the endorsement of his name on the note declared on is a
             forgery; that after the service of the writ, Viele acknowledg-
             ed the forgery and engaged to settle the suit; that relying on
             his engagements, he took no measures to defend the suit un-
             til the 8th day of January, 1828, when he was informed that
             a default had been entered. These affidavits of the defend-
             ant were read in evidence.

             The plaintiffs offered to prove by the sheriff of Rensselaer
             county, that in August, 1827, he held two executions against
             the defendant on judgments obtained against him; that the
             defendant repeatedly promised to pay them, and not until
             after Viele absconded did he pretend that the judgments had
             been obtained on forged notes, which pretence he then set
             up. This evidence was objected to and rejected. The
             plaintiffs then offered to prove that Viele had for three or
             four years before the trial of this cause, in a great number of
             instances, endorsed the name of the defendant upon bills and
             notes, made by him in the same manner as is disclosed in the
             affidavits of the defendant; that the knowledge of such en-
             dorsements had been brought home to the defendant, and
             that in no instance had he denied Viele's authority so to use
             his name, but on the contrary had assented to and acquiesced
             in the same, relying upon Viele's promise to take up the notes;

and that in no instance had the defendant alleged that Viele had forged his name to such bills and notes until Viele had absconded.    This evidence also was objected to and overruled, and a verdict was rendered for the defendant, which was now moved to be set aside.

*D. Buel*, jun. for the defendant.

*O. L. Holley*, for the plaintiff.

*By the Court*, SAVAGE, C. J.    The question here is whether there was evidence sufficient to authorise the jury in finding that the name of the defendant was put on the note as endorser by his consent.    On this motion the facts shewn and those offered to be shewn are all to be considered as proved.    The issue to be tried was whether the defendant authorized the use of his name in this particular case ; but if Viele had a general authority, that would be sufficient to maintain the issue for the plaintiff.

The authority of an agent to subscribe policies of insurance may be proved by the agent himself; and it is sufficient to shew that the defendant has recognized his act on a particular occasion, or that he has recognized him on several other occasions as his agent for subscribing policies.    (2 Phil. Ev. 45.)    In *Neal* v. *Irving*, (1 Esp. R. 61,) it was shewn that one Hutchins was in the habit of subscribing policies for the defendant.    Lord Kenyon held this sufficient evidence of authority to charge the defendant, saying, that if Hutchins was only a particular agent for the defendant it lay upon him to shew it.    In a subsequent case, *Courteen* v. *Touse* (1 Camp. 45,) the proof was that one Butler signed the policy in the defendant's name, and had often done so, but the witness knew of no authority for that purpose, nor did he know any instance in which the defendant had paid a loss upon a policy so subscribed.    Lord Ellenborough held the proof must be carried further.    In *Barber* v. *Gingell*, (3 Esp. R. 60,) the defence was that the acceptance on the bill of exchange was a forgery.    To counteract this it was shewn that when payment was demanded on Saturday the defendant requested the clerk to call on Monday, but without look-

NEW-YORK,
May, 1830.

Weed
v.
Carpenter.

ing at the bill. The plaintiff further proved that Taylor, who had forged the bill, had formerly been connected in business with the defendant, and that the defendant had paid several bills drawn like the present, and to which Tailor was supposed to have written an acceptance in defendant's name. Lord Kenyon held this an answer to the defence of forgery; for though the defendant had not accepted the bill, he had adopted the acceptance and made himself liable to pay it. Chancellor Kent says that an acquiescence in the assumed agency of another, when the acts of the agent are brought to the knowledge of the principal, is equivalent to an express authority. By permitting another to hold himself out to the world as his agent, the principal adopts his acts, and will be held bound to the person who gives credit thereafter to the other in the capacity of his agent. (2 Kent's Comm. 478.) Chitty on Bills, p. 25, says that authority to draw, indorse, or accept bills may be implied; and if a drawee of a bill has previously paid several bills accepted in his name by a third person, with whom he had connections in trade, he would be liable though accepted without his authority: and refers to *Barber* v. *Gingell*, (3 Esp. R. 60.) In *Long* v. *Colburn*, (11 Mass. R. 98,) Parker, Justice, says, "this authority (to sign a note) may be by parol, by letter, by verbal directions, or may even be implied from certain relations proved to exist between the actual maker of the note and him for whom he undertakes to act; and it may sometimes be inferred from the subsequent assent or ratification of the party who is charged by the writing. The same doctrine is to be found in treatises on agency. (1 Livermore, 37; Paley, part 1, ch. 3, § 2.)

These authorities, with the exception of (3 Esp. R. 60,) treat of a person who acts openly as the agent of another, and the reason why the principal who assents subsequently shall be bound is, that the public may have given credit to the agent on the strength of his agency: and otherwise, innumerable frauds might be practised. In a case like the present, where there was no pretence of agency, but where the representation was that the party had subscribed his own name, although the public could not give credit to the acts

of Viele as the agent of the defendant, yet the ratification of a single case was calculated to enable Viele to practice innumerable frauds. And a party who should wink at such practices for years, and then disavow the authority of the person who thus made use of his name, should not be permitted to deny the authority of those acts which he had sanctioned, and even induced, but should be punished as the participant in the fraud practised upon the public or individuals.

We are to assume in this case, that for three or four years Viele has been using the defendant's name upon his own notes with the defendant's knowledge. It appears that in one instance, an execution was levied, which the defendant understood was on Viele's business, and which he did not only not seek to set aside, but promised to pay for more than two months; and then, after Viele had absconded, attempted to set aside; and in this very case, where the writ was served on him more than two months before Viele absconded, he made no defence, but suffered a default; never disclosed the alleged forgery in this nor any other case, though cognizant of numerous facts of the same kind for years; but as soon as his friends and brother-in-law had escaped and was no longer amenable to punishment, he disavowed his signature and the authority of Viele. This looks very much like fraud. I should not only have permitted this evidence to go to the jury, but had they, upon the evidence, found an implied authority in Viele to use the defendant's name, I should be unwilling to disturb the verdict.

I am of opinion that a new trial should be granted, with costs to abide the event.